BLAIR C. PEREZ
Attorney for the United States
Acting Under Authority Conferred by 28 U.S.C. § 515
ANDREW G. SCHOPLER, CASB# 236585
MARK W. PLETCHER, Colorado State Bar No. 034615
HELEN H. HONG, CASB# 235635
Assistant U.S. Attorneys
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-8068/9714/6990
Email: helen.hong@usdoj.gov

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JOSE SUSUMO AZANO MATSURA (1),<br>    aka Mr. A.,<br>    aka Mr. Lambo,<br>RAVNEET SINGH (2),<br>    aka Ravi Singh,<br>MARCO POLO CORTES (4),<br>EDWARD SUSUMO AZANO HESTER (5),<br>    aka Susu,<br>    aka Junior,<br><br>        Defendants. | Case No.:    14CR0388-MMA<br>Trial Date:  August 12, 2016<br>Time:        8:30 a.m.<br><br>**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT AZANO'S ORAL MOTION FOR A MISTRIAL** |

## I

## INTRODUCTION

The prosecutor's attempt to elicit testimony regarding defendant Azano's continuing support for Filner after his problems—using defendant Singh's services—was entirely appropriate. It tended to prove the defendants' past support for Filner, as well as Azano's continuing interest in "protecting his investment." The fact that Filner resigned has already been brought out in this trial, and the prosecutor made no attempt to elicit or focus on any salacious details. Since this evidence is relevant, was previously disclosed in discovery, and deals with events during the course of the charged conspiracy, it is not grounds for a mistrial, and in fact it should be admitted in this trial.

## II

## STATEMENT OF FACTS

Prior to today's testimony by former Filner campaign manager Edward Clancy, the subject of Mayor Bob Filner's sexual harassment case had only been referenced by the defense. For example, in defendant Azano's opening statement—in the very first transcript page—his counsel stated that "it's a compelling story that this guy here [defendant Azano] is somehow linked to, for our disgrace, mayor Bob Filner, trying to appeal to your emotions, sex scandal." Govt. Exh. MIST-1, at 3, lines 16-19. During that same opening statement, defense counsel mentioned a time "after Filner withdraws or resigns because of his groping problem." Govt. Exh. MIST-1, at 5, lines 6-7. *See also* Govt. Exh. MIST-1, at 4, line 24 ("disgraced Filner").

During today's testimony, the prosecutor asked Mr. Clancy several questions about defendant Azano's plan to use defendant Singh's social media services to improve Mayor Filner's public image in 2013. The prosecutor began this line of questioning by referring vaguely to the time when Mayor Filner encountered "additional problems." Govt. Exh. MIST-2, at 5, lines 22-23. During his answer, Mr. Clancy volunteered, without objection, that Mayor Filner received negative publicity regarding "the sexual harassment allegations [in around July 2013]." Govt. Exh. MIST-2, at 6, line 21. He testified that the goal of using defendant Singh's social media services "for public imaging" was to increase "Mr. Filner's current position." Govt. Exh. MIST-2, at 6, lines 12-21.

Following up on this line of inquiry, the prosecutor asked, "Why, if Mr. Encinas mentioned it, did Mr. Azano want to help Bob Filner with his public image?" Govt. Exh. MIST-2, at 7, lines 1-2. This prompted defendant Azano's counsel to object on the grounds of "relevance, lack of foundation, outside the scope of discovery, prejudice, moving to attempt to inflame the jury unnecessarily." Govt. Exh. MIST-2, at 7. Counsel later moved for a mistrial, arguing that the prosecutor was "trying, I believe to inflame the jury and was introducing without any foundation whatever, material that was completely outside the scope [of] this indictment and outside the scope of the hundreds of thousands

of documents we got in discovery. . . . It was an attempt to link Mr. Azano to suggest that he was somehow trying to rehabilitate" Mayor Filner.  Govt. Exh. MIST-2, at 8.

## III

## RESPONSE IN OPPOSITION

**A. EVIDENCE THAT WHEN MAYOR FILNER ENCOUNTERED PROBLEMS DEFENDANT AZANO SOUGHT TO "PROTECT HIS INVESTMENT" BY OFFERING DEFENDANT SINGH'S SERVICES DOES NOT WARRANT A MISTRIAL; IN FACT, THIS EVIDENCE IS ENTIRELY ADMISSIBLE TO PROVE THE CONSPIRACY CONTINUED THROUGH SEPTEMBER 2013, AS CHARGED IN THE INDICTMENT**

1. **Governing Law: Mistrial**

Whether a mistrial should be granted based on a prosecutor's improper statements is within the sound discretion of the district court and requires a two-step analysis.  *See United States v. Cardenas-Mendoza*, 579 F.3d 1024, 1030 (9th Cir. 2009).   First, the Court must decide whether the statement was improper.  *See id*.  If so, the Court must then decide whether those statements prejudiced the defendant.  *See id.*  ("A district court does not abuse its discretion in denying a mistrial where the prosecutor's improper statement is not prejudicial.").  Critically, even assuming an improper statement was made "[d]eclaring a mistrial is appropriate only where a cautionary instruction is unlikely to cure the prejudicial effect of an error."  *United States v. Charmley*, 764 F.2d 675, 677 (9th Cir. 1985); *United States v. Crenshaw*, 698 F.2d 1060, 1063 (9th Cir. 1983) ("Reversing a trial court's decision not to grant a mistrial for improper comments by the prosecutor is appropriate only if the comments are so gross as probably to prejudice the defendant and any resulting prejudice is not neutralized by the court's instructions.").

//
//
//
//
//
//

2. **The Prosecutor's Question Was Proper, and the United States is Entitled to Show that Defendant Azano Sought to Continue the Conspiracy with Defendant Singh's Services in Order to "Protect His Investment" When Mayor Filner Encountered Problems**

During this trial, the United States has studiously avoided attempting to elicit the details of the problems that led to Mayor Filner's resignation.[1] But Azano's reaction to those difficulties is relevant to prove the ongoing conspiracy. Having invested hundreds of thousands of dollars supporting Mayor Filner's election, defendant Azano sought to "protect his investment" by exploring the possibility of using defendant Singh again to bolster Mayor Filner's public image. The prosecutor's questions were aimed at eliciting such proper and admissible evidence, which tended to show that defendants Azano and Singh had in fact illegally supported Filner in the past and that the conspiracy was ongoing.

The indictment charges a conspiracy that extends "through September 2013," Doc. 336, at 6, so it is entirely proper for the United States to explore conduct in furtherance of that conspiracy after Mayor Filner's troubles after their publication in July 2013. Furthermore, there is a foundation for this evidence, to the extent Mr. Clancy learned about the plan from a co-conspirator, Ernesto Encinas.

3. **The Challenged Evidence is Not Outside the Scope of Discovery, and In Fact Has Been Available to the Defense for Years**

Assistant U.S. Attorney Mark Pletcher already set forth a substantial record that this information was previously provided in discovery, and therefore could not constitute a discovery violation. *See* Govt. Exh. MIST-2, at 9-10. The United States supplements that record here by copying below the exact pages from discovery where this information appears:

//
//
//
//

---

[1] It bears noting that defendant Azano's counsel revealed the nature of those problems repeatedly in opening statement. Govt. Exh. MIST-1, at 3-5.

> Continuation of FD-302 of Interview of Edward Clancy , On 08/27/2013 , Page 8 of 10
>
> When Filner started getting into trouble with the sexual allegations in July 2013, Encinas said that he had approval to spend some money to bring Singh to San Diego again to help Filner.

EM_AGT RPT_ROI_00000572 (Oct. 2, 2013 ROI) (produced Feb. 10, 2014)

> In approximately June 2013, Encinas told Clancy via telephone that he had heard rumors that Filner had sexually harassed women. Clancy told Encinas that he had not heard these rumors. About one week later, the sexual harassment allegations became public. Around the same time, Clancy met with Encinas, Cortes, Becerra, and Becerra's general manager, Lou LNU, to discuss Becerra's permitting issue. The meeting took place in Little Italy. During the meeting, Encinas asked Clancy if there was anything he should do to help Filner with the sexual harassment allegations. Encinas suggested bringing Singh back to San Diego to help; Clancy told Encinas that he did not think it was necessary at the time. A couple of weeks later, the sexual harassment allegations against Filner became more rampant. Around July 19, 2013, Irene McCormick held her press conference. Encinas called Clancy and said that he got the "okay" to bring Singh back to San Diego to help Filner and asked Clancy if he should. Clancy said no, that Filner's goose was cooked, and he did not think Encinas' efforts would be worthwhile. Clancy did not specifically ask who had given Encinas the "okay" to solicit Singh's services; however, Clancy knew that Mr. A would be the one to fund Singh for the services he would have provided.
>
> Between July and August 2013, Clancy had e-mail and text message conversations with Becerra and Encinas regarding Becerra's permitting issue. Clancy was assisting Encinas and Becerra with this issue because Clancy liked Becerra. Becerra was a young guy who made his own success, and Clancy was following through on this issue as a favor to Becerra.
>
> Encinas seized every opportunity to mention that Mr. A had supported Filner a lot because he believed he could use this to his advantage. Encinas did this because he and Mr. A expected something in return for all of the money they had contributed to the Campaign. Encinas expected that he should be able to have meetings with Filner about his own issues that have nothing to do with Mr. A because Encinas took credit for getting Mr A. to contribute to Filner's campaign.
>
> Clancy met Encinas in the second week of August 2013 at Brick and Bell Cafe in La Jolla. Encinas asked again if Mr. A should bring Singh back out to help Filner. Clancy told Encinas to save his "ammo," and use it for

## IV

## **CONCLUSION**

Since the prosecutor sought to elicit relevant testimony—and avoid focusing on any unfairly prejudicial details of Mayor Filner's troubles—the motion for mistrial should be denied. Furthermore, the United States should be allowed to introduce evidence that defendant Azano continued to support Mayor Filner after his troubles, including exploring

1  the possibility of again using defendant Singh's social media services to help with Mayor
2  Filner's public image.
3  DATED: August 11, 2016                              Respectfully submitted,

                                                      BLAIR C. PEREZ
                                                      Attorney for the United States
                                                      Acting Under 28 U.S.C. § 515

                                                      /s/ *Andrew G. Schopler*
                                                      ANDREW G. SCHOPLER
                                                      MARK W. PLETCHER
                                                      HELEN H. HONG
                                                      Assistant U.S. Attorneys

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>　　v.<br><br>JOSE SUSUMO AZANO MATSURA (1),<br>　　aka Mr. A.,<br>　　aka Mr. Lambo,<br>RAVNEET SINGH (2),<br>　　aka Ravi Singh,<br>MARCO POLO CORTES (4),<br>EDWARD SUSUMO AZANO HESTER (5),<br>　　aka Susu,<br>　　aka Junior,<br><br>　　　　Defendants. | Case No. 14CR0388-MMA<br><br>CERTIFICATE OF SERVICE |

I, the undersigned, declare under penalty of perjury that I served the foregoing document on the above-captioned party(ies) by:

- ■ electronically filing it with the U.S. District Court for the Southern District of California using its ECF System, which electronically notifies the party(ies).

- ☐ causing the foregoing to be mailed by first class mail to the parties identified with the District Court Clerk on the ECF System.

- ☐ causing the foregoing to be mailed by first class mail to the following non-ECF participant in this case at the last known address, at which place there is delivery service of mail from the United States Postal Service:

Executed on August 11, 2016.　　　　/s/ *Andrew G. Schopler*
　　　　　　　　　　　　　　　　　　ANDREW G. SCHOPLER
　　　　　　　　　　　　　　　　　　MARK W. PLETCHER
　　　　　　　　　　　　　　　　　　HELEN H. HONG
　　　　　　　　　　　　　　　　　　Assistant United States Attorney