BLAIR C. PEREZ
Attorney for the United States
Acting Under Authority Conferred by 28 U.S.C. § 515
PHILIP L.B. HALPERN, CASB 133370
MARK W. PLETCHER, Colorado State Bar No. 034615
HELEN H. HONG, CASB 235635
BILLY JOE MCLAIN, CASB 290682
Assistant U.S. Attorneys
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-6990
Email: helen.hong@usdoj.gov

Attorneys for the United States

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JOSE SUSUMO AZANO MATSURA (1),<br>    aka Mr. A.,<br>    aka Mr. Lambo,<br>RAVNEET SINGH (2),<br>    aka Ravi Singh,<br>MARCO POLO CORTES (4),<br>EDWARD SUSUMO AZANO HESTER (5),<br>    aka Susu,<br>    aka Junior,<br><br>    Defendant. | Case No.: 14-CR-0388-MMA<br><br>**UNITED STATES'S OPPOSITION TO SINGH'S MOTION FOR A NEW TRIAL UNDER RULE 33 [632-1]** |

Singh's motion for a new trial should be denied.

This Court may "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). The "interests of justice" require a new trial if a "serious miscarriage of justice may have occurred." *United States v. Alston*, 974 F.2d 1206, 1211 (9th Cir. 1992). None occurred here. Singh's motion should be denied.

## I.     The United States Complied With Its Brady Obligations Regarding Clancy

"To reverse a conviction for a discovery violation, . . . the error [must have] resulted in prejudice to [the defendant's] substantial rights." *United States v. de Cruz*, 82 F.3d 856, 866 (9th Cir. 1996). "The prejudice that must be shown to justify reversal for a discovery violation is a likelihood that the verdict would have been different had

the government complied with the discovery rules[.]" *United States v. Mendoza*, 244 F.3d 1037, 1047 (9th Cir. 2001). A new trial is appropriate for a Rule 16 violation only if other available remedies are inadequate to provide a fair trial. *United States v. Miller*, 199 F.3d 416, 420 (7th Cir. 1999).

For the reasons identified in the United States's opposition to Singh's Motion to Dismiss [633-1], Singh's motion for a new trial should be denied. The United States fully complied with its discovery obligations and previously disclosed that Clancy had been told by Singh that Azano was paying for his services. Singh can claim no pre-trial investigation or trial surprise, since discovery established that Singh had disclosed that Azano was paying for the social media work he did for Filner's campaign.

## II.   The Court Did Not Abuse Its Discretion By Playing Only Admitted Evidence for Jurors

Singh seeks a new trial because transcripts—which were never admitted in evidence—were not supplied to the jury. Mot. [632-1] at 3-6; see also RT 815/16 (testimony of Clancy) at 9:13-16 (prosecutor describing how "each video will have a streaming transcript which is meant as a demonstrative exhibit"). Because he cannot show a serious miscarriage of justice, his motion on this ground should be denied.

As an initial matter, no jury is *entitled* to have even properly admitted video exhibits in a jury room. The decision to send exhibits back with a jury lies within the broad discretion of the district court. See, e.g., *United States v. DeCoito*, 764 F.2d 690, 695 (9th Cir. 1985);*United States v. Chadwell*, 798 F.3d 910 (9th Cir. 2015). The same is true of transcripts of recordings played in open court. *United States v. Taghipour*, 964 F.2d 908, 910 (9th Cir. 1992); *United States v. Turner*, 528 F.2d 143, 168 (9th Cir. 1975). But while a district court may be permitted to allow a jury to review recordings or transcripts, it is not required to do so. That alone disposes of Singh's challenge.

In any event, the jurors did have an opportunity to review what was properly admitted in this case: the videos. See, e.g., Supplemental Response to Jury Note #3 [469-7] ("Respectfully, there are no written transcripts in evidence of the four videos.

If you wish to watch the four videos, we can reply them for you in open court."). The jurors heard Singh's requested excerpt in the government's case in chief, GEX AA-4, RT 8/15/16 at 15:2-21, which included the rolling transcript. They then heard about it during Singh's closing. And they watched it multiple times when they requested an opportunity to view the videos during deliberations.

Even if that were not the case, the inference Singh sought the jury to make from the transcript of the video was dwarfed by contradictory evidence introduced at trial. Singh asserts that the clip became the "lynchpin in Mr. Singh's defense that he was not paid by Mr. Azano but was rather donating his services to Dumanis and Filner as an unpaid favor to one of his clients." Mot. [632-1] at 3. But as Singh readily admits, that defense was "directly contradicted" by the testimony of Ed Clancy. Mot. [633-1] at 7; RT 8/11/16 (Testimony of Clancy) at 31:2-7. Indeed, Singh has called Clancy's testimony so devastating that he has requested the drastic remedy of dismissal of the indictment, *id.*, as well as a new trial. Mot. [632-1] at 3.

Beyond Clancy's testimony, the jury heard Singh's own words:

```
16    SINGH:    Okay, good.  And...and you...you're
17              thinking...you're thinking A to Z or
18              just sort of like an overall digital
19              strategy and then basically he...he
20              would just be a sponsor, right?
21              We run...we run it through a separate
22              PAC or whatever kinda deal and...and
23              keep 'em isolated, right?  But he could
24              make a direct payment to us, correct?
25    ENCINAS:  Yeah, he...he'll make a direct payment
01              to you.  He doesn't wanna do an I.E.,
02              he doesn't wanna do anything.  He wants
03              me to keep himself secret, you know?
```

```
04              He wants to...
05    SINGH:    ...okay, got it...
06    ENCINAS:   ...he'll pay you direct just like,
07              you know, Mister A did with you.
08              At least that's how he...
09    SINGH:    ...okay...
10    ENCINAS:   ...at least that's how he wants to do
11              it...
12    SINGH:    ...okay. Perfect. Sounds good.
```

GEX AA-5. In short, Singh himself undermined the meaning he asked the jury to draw from the video transcript.

Singh's admissions aligned the testimony of others—Meghan Standefer testified, for example, that Singh told her that "there was a lot of money involved" for his work on the Filner campaign. RT 8/8/16 (testimony of Meghan Standefer) at 10:13-17. At some point, Singh told her that the Filner project was valued at "like 60,000 or six figures or something like that." *Id.* at 11:8-10. His admission also aligned with the financial records that established Azano's payments through Broadlink for Singh's work on Dumanis's and Filner's campaigns. See, e.g., GEX 50-4 (Azano writing in an email "No more money, that wasn't the agmt with Ravi we will only transfer what I told him" in response to an invoice for the "betty boo project for 100l it was originally 75 but Mr Singh explained the need for the additional 25 during his last visit to San Diego and Mr A verbally agreed"); 26-14 (email from Singh to Ronsheim, asking for proposal for Filner campaign totaling 105k); 32-4 (invoice for $97,000); 26-16 (resulting Plastic Man proposal created after deposit of funds); 32-13P (invoice for $95,000); 32-6 (email asking for invoice for "95k"); 32-5 (E Solutions bank records reflecting wire transfers from Azano's Broadlink).

Indeed, the interpretation of the clip that Singh offers was undermined by the witness testifying about the clip on the stand. Singh contends that the significant portion of the video was the statement by Encinas that Singh was "just donating" his services:

```
25:25        CLANCY:      ...I mean how's he get paid?
26: Page 26
26: 01       ENCINAS:     Who's that?
26: 02       CLANCY:      Ravi.
26: 03       ENCINAS:     By some other (UI).  He gets money
26: 04                    from some other people. (LAUGHS).
26: 05       CLANCY:      Oh yeah?
26: 06       ENCINAS:     Yeah.  (UI)...(LOUD MUSIC).
26: 07       CLANCY:      The same as the wall, you know,
26: 08                    like...
26: 09       ENCINAS:     ...yeah...
26:10        CLANCY:      ...doin' the walls and...
26:11        ENCINAS:     ...it's between (UI) and
26:12                     Mister A...(LOUD MUSIC).
26:13        CLANCY:      Oh yeah?
26:14        ENCINAS:     (UI).  (LOUD MUSIC).
26:15        CLANCY:      I mean we have to be careful with
26:16                     that.
26:17        ENCINAS:     Yeah, I know.  I know.  But let's put
26:18                     it this way.  He owed, uh, Mister A
26:19                     owed him money for other stuff.
26:20                     So he was just donating.  (LAUGHS).
```

But even Clancy explained that the ensuing laughter conveyed that it was not true. RT 8/15/16 at 16:11-17.

This Court properly exercised its discretion by declining Singh's request to show the requested video clip with the rolling transcript again—calling attention to it—when the jury had heard the evidence and reviewed the video multiple times. This is particularly so here, in light of the overwhelming evidence undermining Singh's "I just donated my time" defense. *Alston*, 974 F.2d at 1211(new trial warranted only where "evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred").

## III. The Court Did Not Abuse Its Discretion By Denying the Missing Witness Instruction

The Court appropriately declined to instruct the jury with the "Missing Witness" instruction. Ernie Encinas was neither missing nor unavailable. That is dispositive.

During trial, the United States helped coordinate contact between Azano's attorney and Encinas's attorney about serving a subpoena to secure Encinas's presence at trial. Encinas was subject to any defendant's subpoena power and available in San Diego to testify. Singh does not even suggest that he secured a trial subpoena for Encinas, or attempted to serve one on him. He has therefore waived any arguments about Encinas's opportunity.

Singh makes clear that his complaint is that Encinas was unwilling to meet pre-trial for witness preparation sessions. But Singh cites no authority—because there is none—that an unwillingness to chat *pre-trial* renders a witness unavailable or missing at trial, when the witness is otherwise available to testify. And Singh all but admits that he did *not* want Encinas to testify at trial or to subpoena him because Encinas had declined invitations for pre-trial interviews. Mot. [632-1] at 8 ("As a practical matter, it would have been impossible (and potentially even malpractice) for Mr. Singh's counsel to call Ernie Encinas to the witness stand with no preparation whatsoever."). Singhs' attorneys concern about malpractice, however, does not mean Encinas was unavailable at trial.

Singh turns the standard for gauging the propriety of a witness missing instruction on its head. Singh states that "Encinas was peculiarly *unavailable* to Mr. Singh[.]" *Id.* at 9. Not so. But even if that were the case, the witness instruction requires more. Encinas must be "peculiarly *within* the power of the other party" and actually missing or unavailable. *United States v. Ramirez*, 714 F.3d 1134, 1137 (9th Cir.2013). Neither was the case.

Singh must also establish that "under the circumstances, an inference of unfavorable testimony from an absent witness is a natural and reasonable one." *Id.* That is not the case here. As the United States has repeatedly assured the Court and defense counsel, no pre-trial preparation sessions resulted in discoverable *Brady*, *Jencks*, *Giglio*, or Rule 16 material that was not disclosed. Accordingly, the parties are left with Encinas's sworn plea agreement (attached as Exhibit 1 to the United States's opposition to the motion for discovery [641-1]), which demonstrates that his testimony would have been unfavorable *to the defense*:

3.  Between approximately 2011 and 2013, there was an agreement between Defendant, Azano, Ravneet Singh (charged elsewhere), Marco Polo Cortes (charged elsewhere), a person hereinafter referred to as "the Straw Donor," and others, to:

a.  knowingly and willfully make foreign national contributions aggregating $25,000 and more during a calendar year;

b.  knowingly and willfully make foreign national expenditures aggregating $25,000 and more during a calendar year;

c.  knowingly and willfully make contributions to a candidate for federal office in the names of other persons, aggregating $25,000 and more during a calendar year; and

d.  knowingly falsify a record with the intent to impede, obstruct and influence the investigation and proper administration of a matter within the jurisdiction of the Federal Bureau of Investigation.

Regardless, Singh and his co-defendants made the "missing witness" point in closing arguments. They repeatedly argued that the jurors should draw a negative inference from Encinas's omission from the witness list. As Singh's attorney repeatedly claimed, Encinas's testimony was a "missing report" hidden from the "cardiologist." "The court has the discretion to give a missing witness instruction or to leave the matter to the argument of counsel." See *United States v. Kojayan*, 8 F.3d 1315, 1317 n.2, 1320-21 (9th Cir.1993); Manual of Model Criminal Jury Instructions for the Ninth Circuit, No. 4.13. Leaving the matter to the argument of counsel here—given these facts—fell well within this Court's proper exercise of discretion. Singh's motion for a new trial should be denied.

## IV.   The Court Properly Denied the Motion to Sever

Singh was not deprived of a fair trial by sitting with his co-conspirators. The United States incorporates its response in opposition to Singh's pre-trial motion to sever. Opp. [225]. This Court should deny the motion for a new trial on the same

grounds.[1] If anything, the propriety of denying severance is even more clear post-trial given the jury's evident ability to weigh the evidence against each defendant individually. See, e.g., Mistrial for Cortes. In any event, the evidence that Singh claims was unfairly prejudicial was all part of the conspiracy with which he was charged, and would have been introduced in a trial against him alone. Mot. [632] at 9-10. *United States v. Fernandez*, 388 F.3d 1199, 1242 (9th Cir. 2004); *see also United States v. Crespo de Llano*, 838 F.2d 1006, 1020 (9th Cir. 1987) (affirming denial of defendant's severance motion where the "evidence introduced at trial would have been admissible against him in a separate trial to prove the conspiracy charge").

## V.   Singh Had the Opportunity to Impeach Encinas's Testimony

Singh claims that he was improperly denied an opportunity to conduct a "full and complete cross-examination of Agent Meisel." Mot. [632-1] at 12. Not so. First, the parties reached a stipulation that Singh agreed would streamline his cross-examination of Meisel. See RT 8/23/16 [422] (testimony of Meisel) at 13:20-14:2. Second, he was subject to recall by any defense witness for questions that exceeded the scope of Agent Meisel's direct examination. *Id.* at 15:15-20. Although Azano recalled Meisel, Singh did not. See Witness List [482]. No serious miscarriage of justice occurred.

## VI.   The Rebuttal Closing Argument Was Proper

The rebuttal closing remarks offer no ground for a new trial.

---

[1]      Singh appears to have waived severance as a grounds for relief, since the United States cannot recall Singh renewing his request at the close of evidence. See *United States v. Alvarez*, 358 F.3d 1194, 1206 (9th Cir. 2004) ("It is well-settled that the motion to sever must be renewed at the close of evidence or it is waived."); *United States v. Decoud*, 456 F.3d 996, 1008 (9th Cir. 2006) ("The reason for requiring a defendant to renew his severance motion is to enable the trial court to assess more accurately whether a joinder is prejudicial at a time when the evidence is fully developed."); *United States v. Free*, 841 F.2d 321, 324 (9th Cir. 1988) ("a defendant could deliberately fail to make a meritorious motion and wait to see what verdict the jury returns . . . Such a strategy runs contrary to the very purpose underlying joinder.").

Singh first contends that the United States improperly shifted the burden of proof by suggesting that the defense attorneys could have subpoenaed Encinas to testify. That was not improper. The prosecutor permissibly identified the defendants' ability to call Encinas as a witness in response to their closing arguments that the United States hid exculpatory evidence by declining to call Encinas as a witness. As the Ninth Circuit recently observed:

> The prosecutor's reference to the defense's subpoena power, made during closing argument in response to defense counsel's comments about the government's failure to call certain witnesses, was not improper. See *United States v. Cabrera*, 201 F.3d 1243, 1250 (9th Cir. 2000) (holding that "a prosecutor's comment on a defendant's failure to call a witness does not shift the burden of proof ... so long as the prosecutor does not violate the defendant's Fifth Amendment rights by commenting on the defendant's failure to testify."). Further, both the prosecutor and defense counsel repeatedly reminded the jury that the government had the burden of proof. Under these facts, we find that no improper burden-shifting occurred. See *United States v. Tucker*, 641 F.3d 1110, 1122 (9th Cir. 2011); see also *United States v. Semikian*, 307 Fed. Appx. 107, 109 (9th Cir. 2009); United *States v. Resendez–Ceballos*, 255 Fed. Appx. 110, 111 (9th Cir. 2007).

*United States v. Lan Thi Tran Nguyen*, 502 F. App'x 678, 681 (9th Cir. 2012) (unpublished). So here. Further, the United States reminded the jury that the United States bears the burden of proof no fewer than three times in the challenged rebuttal argument alone. RT 8/31/16 (rebuttal closing) at 8:14-16 ("The burden to prove this case beyond a reasonable doubt stays always with the United States. Always. That burden never shifts."); 18:23-24 ("The burden to prove the offenses stays with the United States throughout."); 23:17-20 ("Nothing I say or any of these defense attorneys say is evidence at all and the burden throughout this stage with the United States.").[2]

---

[2]   In any event, the jury's split verdict made clear that the challenged remarks did not affect the outcome at all. See, e.g., *United States v. Koon*, 34 F.3d 1416, 1446 (9th Cir.1994) (holding that a verdict acquitting the defendant of some of the charges against her "is indicative of the jury's ability to weigh the evi-dence without prejudice"); *United States v. de Cruz*, 82 F.3d 856, 861 (9th Cir. 1996) (same); *United States v. Manibusan*,

Finally, Singh challenges the prosecutor's rebuttal remarks about Singh's search engine optimization work for Azano. He contends that the United States "misstated the trial evidence by arguing for the first time in rebuttal that Mr. Singh was aware of Mr. Azano's immigration status because he had done internet background research on Mr. Azano and his company as part of a due diligence investigation." Mot. [632-1] at 12. But those were the facts. As Singh's Exhibit 2429 reflects, Singh was intimately familiar with Azano's online presence:



Like us on facebook.com/ElectionMall.USA  ...  Follow us on twitter @ElectionMal

ctionmall   Washington D.C. | Chicago | Los Angeles | Bogota | Brussels | Dublin | Mexico City

EX.2429-041

That "due diligence" included links to articles identifying Azano as a "Mexican businessman" and a "mexican-japanese business tycoon."

529 F. App'x 818, 820-21 (9th Cir. 2013) (unpublished) ("[T]he fact that Manibusan was acquitted of several charges indicates that 'the prosecutor's remarks did not undermine the jury's ability to view the evidence independently and fairly.'").

The prosecutor never contended that Singh had searched on some official government website to learn that Azano was a foreign national. But the prosecutor instead asked the jury to draw the reasonable inference that a business partner—hired to work on Mexican political campaigns, working on Project Snake and Castle, asked to conduct searching inquiries of the client on the internet, which identified the man as a "Mexican businessman—would know. That was a proper inference that the jury could be asked to draw in light of the evidence. It is "the very essence of jury summation" to "invite the jury to infer things from the evidence." *United States v. Kojayan*, 8 F.3d 1315, 1321 (9th Cir. 1993); *id.* ("We fail to see how any of this is even remotely improper. Lawyers are supposed to invite the jury to infer things from the evidence. When a prosecutor asks jurors to deduce a defendant's guilt from circumstantial evidence, for example, he's urging them to take a leap beyond the record, to use their common sense in reaching a conclusion not explicitly spelled out by the evidence. This is the very essence of jury summation.").

Singh suggests that it was somehow improper for the United States to address the SEO project in rebuttal. Not so. Given Singh's closing argument, claiming that Singh did not know Azano was a foreign national, the prosecutor's remarks were entirely fair. *United States v. Bagley*, 772 F.2d 482, 494 (9th Cir. 1985) ("A prosecutor may properly reply to the arguments made by defense counsel[.]"); *United States v. Taylor*, 728 F.2d 930, 935 (7th Cir. 1984) ("[P]rosecutors are entitled to respond to arguments articulated by defense counsel.").

## VII.   There Are No Encinas Records That Have Been Withheld

For the reasons identified in the opposition to the motion for discovery [641-1] and because no discovery has been withheld, the motion for a new trial on this ground should be denied.

* * *

Singh received a fair trial. Because the "interests of justice" would not be well-served by a new trial, the motion [632-1] should be denied.

DATED: May 5, 2017                    Respectfully submitted,

                                      BLAIR C. PEREZ
                                      Attorney for the United States
                                      Acting Under 28 U.S.C. § 515


                                      /s/ Helen H. Hong
                                      PHILIP L.B. HALPERN
                                      MARK W. PLETCHER
                                      HELEN H. HONG
                                      BILLY JOE MCLAIN
                                      Assistant U.S. Attorneys

1
2

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

3

UNITED STATES OF AMERICA                )
                                        )   Case No. 14CR1388-MMA
4                      v.                )
                                        )   CERTIFICATE OF SERVICE
5   JOSE SUSUMO AZANO MATSURA (1),       )
        aka Mr. A.,                     )
6       aka Mr. Lambo,                  )
    RAVNEET SINGH (2),                   )
7       aka Ravi Singh,                 )
    MARCO POLO CORTES (4),               )
8   EDWARD SUSUMO AZANO HESTER (5),      )
        aka Susu,                       )
9       aka Junior,                     )
    _____)

10

11   IT IS HEREBY CERTIFIED THAT:

12          I, Helen H. Hong, am a citizen of the United States and am at least eighteen years

13   of age.  My business address is 880 Front Street, Room 6293, San Diego, California

14   92101-8893.

15          I have caused service of the **Opposition to Singh's Motion for a New Trial**

16   **[632-1]** on the parties by electronically filing the foregoing with the Clerk of the U.S.

17   District Court using its ECF System, which electronically notifies them

18          I declare under penalty of perjury that the foregoing is true and correct.

19   EXECUTED on May 5, 2017.

20
                                        BLAIR C. PEREZ
21                                      Attorney for the United States
                                        Acting Under 28 U.S.C. § 515
22

23                                      /s/ Helen H. Hong
                                        PHILIP L.B. HALPERN
24                                      MARK W. PLETCHER
                                        HELEN H. HONG
25                                      BILLY JOE MCLAIN
                                        Assistant U.S. Attorneys
26

27

28