BLAIR C. PEREZ
Attorney for the United States
Acting Under Authority Conferred by 28 U.S.C. § 515
PHILIP L.B. HALPERN, CASB 133370
MARK W. PLETCHER, Colorado State Bar No. 034615
HELEN H. HONG, CASB 235635
BILLY JOE MCLAIN, CASB 290682
Assistant U.S. Attorneys
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-6990
Email: helen.hong@usdoj.gov

Attorneys for the United States

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JOSE SUSUMO AZANO MATSURA (1),<br>    aka Mr. A.,<br>    aka Mr. Lambo,<br>RAVNEET SINGH (2),<br>    aka Ravi Singh,<br>MARCO POLO CORTES (4),<br>EDWARD SUSUMO AZANO HESTER (5),<br>    aka Susu,<br>    aka Junior,<br><br>           Defendants. | Case No.: 14-CR-0388-MMA<br><br>**UNITED STATES'S OPPOSITION TO SINGH'S MOTION TO DISMISS INDICTMENT FOR ALLEGED DISCOVERY VIOLATIONS [633-1]** |

## I. INTRODUCTION

From the beginning of the case, the United States has accused Azano of attempting to buy political influence by funneling his foreign money into local politicians' campaigns. As each indictment and superseding indictment has alleged, "Azano and others surveyed candidates for various elective offices in San Diego to determine which ones they should support." Third Superseding Indictment (TSI) ¶ 28(a). Azano "sought" and successfully secured "private meetings with candidates." TSI ¶ 28(b). Azano and his intermediaries then directly "communicat[ed] with campaign staff and other stakeholders about how Azano might be able to lend financial support." TSI ¶ 28(c). And "[o]nce Azano decided to support a candidate, he and his

co-conspirators designed secret, illicit methods of contributing to the candidate's campaign, knowing that Azano could not finance the campaign directly because of campaign contribution/donation limits and his status as a foreign national." TSI ¶ 29(d). While the contributions were designed to be "secret" and "illicit" and hidden from publicly-filed campaign reports, Azano's role in securing the donations was never meant to be a secret from the politicians themselves. His plan could work—and he could expect political favor—only if he was credited for his role.

Those facts were not contained in accusatory pleadings alone. They were borne out in the terabytes of discovery disclosed to the defendants throughout the course of this litigation. For example, the defendants received discovery in April 2014—just two months after the case began—that included a sworn statement from Ernie Encinas, where he vowed in a plea agreement that Singh, Encinas and Cortes "made it clear to [Clancy] that Azano would pay for the social media spending" during a face-to-face meeting:

> 21. In about October 2012, Singh, Defendant and Cortes approached a representative of Candidate 3. Together, these coconspirators told the representative that they could arrange for certain social media spending on behalf of Candidate 3's campaign. During this and subsequent conversations, Singh, Defendant and Cortes made it clear to the representative that Azano would pay for the social media spending.

EM-ENCINAS-MISC-0000017 (attached as Exhibit 1); see also EM_AGT RPT_ROI_00000601 (10/30/13 interview of Ernie Encinas) (reporting meeting with Encinas and Singh where Encinas "introduced Singh to Clancy" and how there was a "discussion about payment for Singh's work": "It was understood that whatever the campaign could not pay, Mr. A would pay."); ibid. ("Cortes and Clancy knew that

Singh was paid by Mr. A.") (produced on February 21, 2014 in the very first discovery production) (attached as Exhibit 2).

That plea agreement was produced over two years before trial began. And it was consistent with Clancy's trial testimony that he learned that Singh's services were funded by Azano. See RT 8/11/16 (Testimony of Clancy) at 31:2-7. Singh's attorneys nonetheless now claim total "surprise" that anyone would testify that Singh had "disclosed Mr. Azano's financing to the campaigns." Mot. [633-1] at 1, 10. They also remarkably claim that they "did not anticipate that a single witness would . . . testify" that Clancy was told that Azano was funding Singh's work.

Nonsense. Singh's attorneys knew since at least early 2014 that Encinas could testify that Clancy knew that Azano was funding ElectionMall's work. And Singh's attorneys report that they have always expected Encinas to testify at trial. Indeed, they wrote in motions filed simultaneous with this one that "it seemed all but certain that [Encinas] would testify" in the "months and weeks leading up to trial" and that they were stunned when the "government abruptly changed course and announced that it would not call Encinas to testify" midway through trial. Mot. [641-1] at 1. Singh's attorneys certainly prepared, then, for the anticipated testimony of Encinas, which included the fact that they now assert is a surprise. No "hindsight" is necessary to see "how things would have transpired" in their trial preparation "if the government had produced Clancy's testimony to Mr. Singh," as Singh now claims. Mot. [633-1] at 11. It was evident at trial: Singh would have defended the claims in exactly the way he elected to defend them because the United States had disclosed that information to his attorneys two years earlier.

Simply put, the United States did not commit any conduct that is "so grossly shocking and so outrageous as to violate the universal sense of justice" or commit any "flagrant misconduct" resulting in substantial prejudice to Singh. The motion to dismiss the indictment [633-1] should be denied.

## II.  ARGUMENT

"[T]he drastic step of dismissing an indictment is a disfavored remedy." *United States v. Jacobs*, 855 F.2d 652, 655 (9th Cir. 1988). A court may dismiss an indictment based on government misconduct under either the Due Process Clause or as an exercise of its supervisory powers. *United States v. Barrera-Moreno*, 951 F.2d 1089, 1091 (9th Cir. 1991). Dismissal on due process grounds is appropriate only where the government conduct is "so grossly shocking and outrageous as to violate the universal sense of justice." *United States v. Kearns*, 5 F.3d 1251, 1253 (9th Cir. 1993) (citations omitted). Government conduct that amounts to "the engineering and direction of the criminal enterprise from start to finish" is necessary to satisfy this "extremely high standard." *United States v. Smith*, 924 F.2d 889, 897 (9th Cir. 1991).

Dismissal under the court's supervisory powers is an "extreme remedy" that is seldom appropriate. *United States v. Lopez*, 4 F.3d 1455, 1464 (9th Cir. 1993). Such a dismissal primarily functions to "remedy a constitutional or statutory violation"; "protect judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury"; and "deter future illegal conduct." *United States v. Stinson*, 647 F.3d 1196, 1210 (9th Cir. 2011) (citations omitted). Dismissal based on the government's failure to comply with its discovery obligations lies within a court's supervisory powers, *Jacobs*, 855 F.2d at 655, but is rare. "A court may dismiss an indictment under its supervisory powers for 'flagrant' conduct resulting in 'substantial prejudice' to the defendant where 'no lesser remedial action is available.'" *United States v. Toilolo*, 666 F. App'x 618, 620 (9th Cir. 2016), cert. denied, No. 16-8418, 2017 WL 1064463 (U.S. Apr. 17, 2017).

Dismissal is not warranted here. As the United States previously explained, see Opposition for Mistrial [404, incorporated fully herein], and as the Court already concluded during trial, the one sentence Clancy uttered during trial is not covered by the government's discovery obligations under *Brady*, *Giglio*, *Jencks*, or Rule 16. [RT 8/16/16 at 3:19-4:2]

### A. *The United States Complied with its Brady Obligations*

The United States fully discharged its *Brady* obligations. Under *Brady*, the United States must disclose information that is "material to either guilt or punishment." *Brady v. Maryland*, 373 U.S. 83, 87 (1963); *United States v. Bagley*, 473 U.S. 667, 674 (1985) ("The holding in *Brady v. Maryland* requires disclosure only of evidence that is both favorable to the accused and 'material either to guilt or to punishment.'"); *United States v. Gardner*, 611 F.2d 770, 775 (9th Cir. 1980) (the government "need only disclose information favorable to the defense that meets the appropriate standard of materiality"). "Favorable" means evidence that is exculpatory or impeaching. *Strickler v. Green*, 527 U.S. 263, 281-282 (1999). As this Court previously found, the fact that Clancy learned that Azano payed for ElectionMall's work on the Filner campaign cannot be said to be evidence that is favorable to Singh; that is, evidence that goes toward negating Singh's guilt; evidence that would reduce Singh's sentence; or evidence that goes to the credibility of any witness. To the contrary, the information is unfavorable to Singh; is evidence that goes toward establishing Singh's guilt; would never reduce Singh's sentence; and bears no relation to the credibility of any witness. See, e.g., *Murdoch v. Castro*, 365 F.3d 699, 704 (9th Cir. 2004) ("The prosecutor in a criminal case shall ... make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense."). The evidence directly supports the United States's allegation that Azano paid for ElectionMall's services and undercuts Singh's defense that Azano did not pay anything for his work on the Filner campaign. In short, the statement was inculpatory, not exculpatory. Indeed, Singh *concedes* that the challenged remark "directly contradicted his chosen theory of defense at trial and thereby inculpated him of Counts One and Three—aiding and abetting foreign national contributions and conspiracy to commit the same." Mot. [633-1] at 7.

But Singh now claims that the testimony was "favorable and exculpatory . . . on Counts 32 and 37, . . . because it shows that Mr. Singh and his employees disclosed

Mr. Azano's involvement to at least one of the campaigns on which they worked. This negates an essential element of the offense of falsification of records." Mot. [633-1] at 8. Singh suggests that a juror "could and likely would find that Clancy's testimony shows that Mr. Singh did not hide Mr. Azano's involvement from the campaigns (and did not instruct his employees to do so)." *Id.* Yet that fact was disclosed.[1] Twenty-seven months before trial. They have known since the beginning of the case that Filner's campaign manager knew Singh's services were funded by Azano. Singh therefore cannot establish that any *Brady* material "was suppressed by the government," as he concedes he must show. Mot. [633-1] at 7 (citing *United States v. Kohring*, 637 F.3d 895, 901-02 (9th Cir. 2010)].

Nor can Singh show prejudice.  Evidence is prejudicial or material under *Brady* "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). There is a "reasonable probability" of prejudice when suppression of evidence "undermines confidence in the outcome of the trial." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995) (citing *Bagley*, 473 U.S. at 678). Singh's only claim of prejudice is that the allegedly suppressed information "negatively affected Singh's trial defense strategy on the falsification of records counts, which in turn negatively

---

[1] In the context of this case, that testimony was not "exculpatory" either, since Clancy was complicit in the scheme. For three days without any discussion of payment, Singh had embedded his team at Filner's campaign headquarters. RT 8/11/16 at 25:13-27:4. He was providing "constant[] work[] on social media platforms, messages, outreaches, and increasing the profile of the Bob Filner campaign." *Id.* at 34:2-4. Clancy knew "it was going to be a costly service." *Id.* at 25:21. So three days in, when Clancy asked Singh for an invoice, Singh responded "Don't worry, It's taken care of." *Id.* at 26:1-2. Clancy then became a participant in the scheme:  as he testified, he "didn't take action on the situation," and he "made a mistake" by not asking further questions. Singh cannot seriously claim that he is absolved of responsibility on Counts 32 and 37 because a conspirator also concealed and covered up from the San Diego County Recorder's Office the fact that Azano was bankrolling in-kind donations. But regardless, the information was not suppressed.

affected his trial defense strategy on the remaining counts." Mot. [633-1] at 9. Singh contends that he "elected" two defenses at trial "[b]ased on the information available at the time[.]" *Id.* But had "Mr. Singh known before trial how Clancy would testify, he could have embraced Clancy's testimony and made it the centerpiece of his defense as to the records counts." *Id.* Singh asserts that he would have "modified his pre-trial investigation and witness examination accordingly" to procure witnesses who would have testified that Singh *admitted* that Azano paid for his in-kind services.

The problem with those (remarkable) claims is that Singh knew these facts before trial, and could have elected to make them the centerpiece of his strategy:

> 21. In about October 2012, Singh, Defendant and Cortes approached a representative of Candidate 3. Together, these coconspirators told the representative that they could arrange for certain social media spending on behalf of Candidate 3's campaign. During this and subsequent conversations, Singh, Defendant and Cortes made it clear to the representative that Azano would pay for the social media spending.

EM-ENCINAS-MISC-0000017. He chose not to.[2] There is no probability, let alone a reasonable one, that the proceedings would have been different. He cannot now, in the

---

[2] And Singh himself explains why: that defense "directly contradict[s] his chosen theory of defense at trial and thereby inculpate[s] him of Counts One and Three[.]" Mot. [633-1] at 7. It is incredible to claim that he would have embraced witnesses (and actually brought witnesses to say in court) that Singh openly admitted to Azano's funding. That would have left Singh on Counts 1 and 3 with the sole (implausible) defense that he did not know Azano was a foreign national. As the United States explains in its opposition to Singh's motion for judgment of acquittal [631-1], that is just implausible in light of the evidence introduced at trial. Opp. [631-1] at 8-11 (identifying evidence supporting Singh's knowledge that Azano was a prohibited foreign national, including the fact that Singh: had been a political candidate in Illinois; was the CEO of ElectionMall, a company that specialized in online campaign fundraising; worked extensively with Azano in Mexico; performed a search engine optimization project relating to Azano's online presence, business ventures, and

guise of some *Brady* allegation, second guess his tactics just because the jury has rejected them.

Even if disclosing Encinas's plea could be said to be insufficient—so non-disclosure of Clancy's direct testimony could be called a *Brady* violation—Singh does not come close to showing that dismissal is the appropriate remedy here. He does not even allege that any non-disclosure amounts to a due process violation that is "so grossly shocking and outrageous as to violate the universal sense of justice." *Kearns*, 5 F.3d at 1253.

Nor can he show that exercising this Court's supervisory powers to dismiss the indictment is appropriate in this context.[3] "A court may dismiss an indictment under its supervisory powers for 'flagrant' conduct resulting in 'substantial prejudice' to the defendant where 'no lesser remedial action is available.'" *United States v. Toilolo*, 666 F. App'x at 620. "Accidental or merely negligent governmental conduct is insufficient to establish flagrant misbehavior." *United States v. Chapman*, 524 F.3d 1073, 1085 (9th Cir. 2008). As Singh's attorneys acknowledge and as the letters and discovery practices have borne out, see, e.g., Exhibits in Support of Opp. [404], the United States has endeavored to provide the defense more than "they could possibly want (and many things that they might not want)." Mot/ [633-1] at 5. Even assuming an accidental or

---

background; shrouded in secrecy his email communications and invoices relating to Azano-funded campaign work; objected to an email identifying Azano and the code name for Azano-financed campaign work for a San Diego mayoral campaign because it was "stupid and dangerous" for him; and agreed to do work for a "foreign investor" on another election project). Moreover, his current position suggests that Singh pursued a wholly spurious defense at the actual trial; his affirmative claim at trial was not that the United States failed to *prove* that he was paid by Azano, but that he was not paid for that work at all and that the evidence showed he was being paid for Project Snake or Castle instead.

[3]   Singh nowhere explains why dismissing Counts 1 and 3 would be appropriate in any event, since he concedes the information is inculpatory as to those counts.

negligent discovery lapse as it relates to Clancy's specific disclosure, dismissal is wholly improper.

### B. *The United States Complied With Its Rule 16 Obligations*

Singh also contends that the United States committed a Rule 16 violation by failing to turn over some document that Clancy referenced during his cross-examination. Singh claims that there is some "written record of Clancy's prior testimony that Miguel de la Vega told him that Mr. Azano paid for Mr. Singh's services to the Filner campaign[.]"[4] Mot. [633-1] at 12. Since Singh appears to be unclear:

> **There is no document memorializing the fact that Clancy disclosed that Miguel de la Vega told him that Mr. Azano paid for Mr. Singh's services.**

Period. It is therefore not in the "possession, custody, or control" of the United States and subject to production. Fed. R. Crim. P. 16(a)(1)(E); *see also United States v. Amaya–Manzanares*, 377 F.3d 39, 42–43 (1st Cir. 2004) ("Rule 16(a)(1)(E) did not apply to the document until it was created"); *United States v. Kahl*, 583 F.2d 1351, 1354 (5th Cir.1978) (upholding district court's refusal to grant discovery of government statistical compilations when such compilations did not exist). Nor is the statement by Clancy "the substance of any relevant oral statement made by the *defendant* . . . in response to interrogation by a person the defendant knew was a government agent,"[5] Rule 16(a)(1)(A) (emphasis added); is not any "relevant written or recorded statement by the defendant" within the meaning of Rule 16(a)(1)(B); is not the statements of an

---

[4] Regrettably, now identifying the specific document that triggered Clancy's response to the cross-examination question is difficult. But it is certainly plausible that the document is the portion of Encinas's plea that identified how Clancy was told that Azano paid for Singh's services. But that remains a guess. What is not a guess is the fact that there are no (none, zero, nothing) discoverable records in the United States's possession that memorializes statements by Clancy that have not been produced.

[5] Of course, the United States did disclose Singh's statement to Clancy that Azano paid his services through Encinas's plea.

employee of an organization, Rule 16(a)(1)(C); is not the defendant's prior record, Rule 16(a)(1)(D); is not any document or tangible object, Rule 16(a)(1)(E); is not a result of a scientific test or experiment, Rule 16(a)(1)(F); and is not the testimony of an expert witness, Rule 16(a)(1)(G). It is not a "written statement made by said witness and signed or otherwise adopted or approved by him," a transcription or recording of a substantially verbatim recital of an oral statement, or the statement of a witness before the grand jury. 18 U.S.C. § 3500(e); see also Fed. R. Crim. P. 26.2. The United States disclosed all such written statements. Clancy's oral statement about de la Vega's disclosures do not come under the requirements of 18 U.S.C. § 3500. Cf. *United States v. Reed*, 575 F.3d 900, 921 (9th Cir. 2009) ("[W]e find nothing in the record to suggest that the notes were a "statement" within the meaning of the Jencks Act, because they were not adopted or approved by any of the witnesses and were not described to be verbatim transcriptions of the witnesses' words.").

Even if the non-disclosure of that lone remark is assumed to constitute a Rule 16 violation, Singh cannot show that dismissal is warranted for the reasons discussed above. Nor is a new trial warranted, since Singh can identify no prejudice.

//

//

//

//

//

//

The United States takes seriously its responsibility to comply with its discovery obligations. The history of this case—and the terabytes of data produced—demonstrate a commitment to scrupulous adherence to our constitutional, statutory, and rules-based obligations. The United States did not fall short, and certainly not in a way to support dismissal of the indictment. Singh's latest motion to dismiss should be denied.[6]

DATED: May 5, 2017

Respectfully submitted,

BLAIR C. PEREZ
Attorney for the United States
Acting Under 28 U.S.C. § 515

/s/ Helen H. Hong
PHILIP L.B. HALPERN
MARK W. PLETCHER
HELEN H. HONG
BILLY JOE MCLAIN
Assistant U.S. Attorneys

---

[6] Singh also seeks dismissal for purported discovery violations related to Ernie Encinas. Mot. [633-1]. The United States has responded to those allegations in response to Mot. [641-1]. No records or information subject to disclosure have been suppressed.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　v.<br>JOSE SUSUMO AZANO MATSURA (1),<br>　　aka Mr. A.,<br>　　aka Mr. Lambo,<br>RAVNEET SINGH (2),<br>　　aka Ravi Singh,<br>MARCO POLO CORTES (4),<br>EDWARD SUSUMO AZANO HESTER (5),<br>　　aka Susu,<br>　　aka Junior, | Case No. 14CR1388-MMA<br><br>CERTIFICATE OF SERVICE |

IT IS HEREBY CERTIFIED THAT:

　　I, Helen H. Hong, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

　　I have caused service of the **Opposition to Singh's Motion for Dismiss [633-1]** on the parties by electronically filing the foregoing with the Clerk of the U.S. District Court using its ECF System, which electronically notifies them

　　I declare under penalty of perjury that the foregoing is true and correct. EXECUTED on May 5, 2017.

　　　　　　　　　　　　　　　　　　BLAIR C. PEREZ
　　　　　　　　　　　　　　　　　　Attorney for the United States
　　　　　　　　　　　　　　　　　　Acting Under 28 U.S.C. § 515


　　　　　　　　　　　　　　　　　　/s/ Helen H. Hong
　　　　　　　　　　　　　　　　　　PHILIP L.B. HALPERN
　　　　　　　　　　　　　　　　　　MARK W. PLETCHER
　　　　　　　　　　　　　　　　　　HELEN H. HONG
　　　　　　　　　　　　　　　　　　BILLY JOE MCLAIN
　　　　　　　　　　　　　　　　　　Assistant U.S. Attorneys