Michael L. Lipman (SBN 66605)
Karen Lehmann Alexander (SBN 265926)
Duane Morris LLP
750 B Street, Suite 2900
San Diego, CA 92101-4681
Telephone: 619 744 2200
Facsimile:  619 744 2201
E-mail:   mllipman@duanemorris.com
          klalexander@duanemorris.com

Attorneys for Defendant
RAVNEET SINGH

# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOSE SUSUMO AZANO MATSURA, RAVNEET SINGH, ELECTIONMALL, INC., MARCO POLO CORTES, AND EDWARD SUSUMO AZANO HESTER,<br><br>Defendants. | Case No. 14CR0388-MMA<br><br>**DEFENDANT RAVNEET SINGH'S REPLY TO GOVERNMENT'S OPPOSITION TO SINGH'S MOTION FOR NEW TRIAL UNDER RULE 33 [Doc. 632]**<br><br>Date:  June 2, 2017<br>Time:  9:30 a.m.<br>Judge:  Michael M. Anello<br>Courtroom:  3A |

DM1\7760314.1                                                       14cr0388 MMA
Singh's Reply to Government's Opposition to Singh's
Motion for New Trial under Rule 33

# INTRODUCTION

This Court should grant Mr. Singh a new trial because the jury's verdicts cannot withstand scrutiny when viewed in light of the individual and cumulative errors that occurred over the course of this six-week trial. For the reasons addressed below, the government's opposition fails to successfully refute Mr. Singh's arguments for a new trial.

# ARGUMENT

## A. The Government Suppressed Material and Exculpatory Evidence

Mr. Singh has addressed separately the discovery violations committed by the government with respect to statements made by Miguel de la Vega to Ed Clancy. *See* [Doc. 633]. In the event this Court does not dismiss the indictment, this Court should grant a new trial so that Mr. Singh is not prejudiced by the government's failure to disclose exculpatory evidence.

## B. The Government Misadvised the Court About the Law Governing Tapes and Transcripts During Jury Deliberations

The government misunderstands Mr. Singh's argument regarding the provision of transcripts to the jurors in deliberations. Mr. Singh does not assert that the Court was legally *compelled* to provide the jurors with transcripts. Rather, Mr. Singh argues that error occurred when government counsel repeatedly misadvised the Court of the status of settled Ninth Circuit law (however unintentionally), leading the Court to reverse itself.

The record shows that at the hearing on Juror Note 3, the Court indicated three times that it was inclined to exercise its discretion to provide the jurors with the transcripts, as Mr. Singh (and the jurors) requested. After government counsel incorrectly argued three times that it would be "structural error" to do so, the Court reversed its position. Further compounding the error, government counsel refused Mr. Singh's request to correct the error the next day.

Regardless of whether it would have been error for the Court to decline to provide jurors with transcripts in the first place, it was certainly error for government counsel to encourage the Court to render a ruling unfavorable to Mr. Singh by presenting the Court with an inaccurate statement of the law.  Mr. Singh does not allege that government counsel did so intentionally.  But under the circumstances, government counsel should have avoided making representations about the law, or requested a brief recess to research the issue.  Had she done either of these things, the resulting error almost certainly would have been avoided altogether, since it appears that the government's primary objection was its (ultimately unfounded) concern for structural error.

The government next tries to argue that there was no prejudice, insisting that the transcript of the Clancy-Encinas video clip "was dwarfed by contradictory evidence introduced at trial." [Doc. 681, p. 3] Yet this Court's trial rulings and the government's own actions demonstrate otherwise.

The Court may recall how the Clancy-Encinas video clip came to be played for the jury in the first place.  Mid-way through the trial, the government announced its intention to introduce three undercover video recordings through witness Ed Clancy.  These video recordings purportedly showed that Mr. Azano paid for Mr. Singh's services to the Filner campaign.  Mr. Singh argued that a fourth Clancy-Encinas clip – the clip establishing that Mr. Singh was "just donating" his time as a favor to Mr. Azano – should be introduced under the rule of completeness.  This Court agreed, overruling the government's strenuous objections.  The Court's ruling shows that the Court recognized the probative value of the Clancy-Encinas clip for Mr. Singh's defense.  The prosecutors' strenuous objections suggest that they recognized it, too.1

---

1 Though the parties do not have the benefit of the transcripts of the hearing and it has been many months since trial, Mr. Singh's counsel recalls that at one point during the hearing on the clips, the government offered to withdraw its request to play one or more of its video clips, rather than have the jury watch Mr. Singh's

The government's misstatement of the law and the Court's rulings thereafter effectively deprived the jurors of the opportunity to review the Encinas-Clancy clip during their deliberations, even though they specifically asked to see it. The jury rendered its verdict convicting Mr. Singh on all four counts shortly thereafter. Mr. Singh is entitled to a new trial.

### C. The Court Erred In Declining to Give the Missing Witness Instruction

The government faults Mr. Singh for citing no authority stating that a government cooperator – who meets with prosecutors days before trial but refuses to speak with the defense pending sentencing – is "unavailable" to the defense. [Doc. 681, p. 6] Government counsel also cites no authority showing that a witness in this position *is* "available" to the defense. This appears to be an issue of first impression, and the only reasonable conclusion to be drawn from the facts and evidence is that Ernie Encinas was "unavailable" to the defense. In fact, he is still unavailable, as he has refused to speak with defense attorneys until after he is sentenced for his cooperation.

Because Encinas was unavailable to the defense, because his absence at trial raised an inference of unfavorable testimony, and because a missing witness jury instruction issued by the Court carries much more weight than a missing witness argument made by defense lawyers in closing, the instruction should have been given. The Court's denial of Mr. Singh's request for the instruction was error warranting a new trial.

### D. The Court Erred In Denying Mr. Singh's Motion to Sever

The government appears to concede that it did not call a single live witness who testified as a co-conspirator against Mr. Singh. Yet it introduced days of testimony from witnesses who testified as co-conspirators against Mr. Singh's co-defendants (including but not limited to Marc Chase, Jason Wolter, Diego Duque).

---

Clancy-Encinas clip. If counsel's memory is correct, this speaks volumes about the government's assessment of the evidentiary significance of the Clancy-Encinas clip.

The jury's verdict shows that Mr. Singh was prejudiced by the spillover effect of the co-conspirator testimony against his co-defendants. This Court's denial of Mr. Singh's motion for severance was error warranting a new trial in which Mr. Singh is tried separate and apart from his co-defendants.2

**E. The Court Erred In Limiting Agent Meisel's Cross-Examination Testimony**

Mr. Singh's Motion presented a page and a half of arguments explaining why the Court's limiting of Agent Meisel's cross-examination constituted prejudicial error. The government attempts to dismiss these arguments in a single paragraph, but fails to convincingly do so.

First, the government opposes this argument by pointing out that the parties reached a stipulation about Agent Meisel's cross-examination. But the parties only reached a stipulation as to Agent Meisel's testimony after the Court made it clear that it would not permit Mr. Singh to engage in the robust cross-examination that he had planned. Mr. Singh should not faulted today for making the best of a bad situation and negotiating a stipulation that allowed him to salvage a small portion of his cross-examination.

Second, the government opposes this argument by claiming that Mr. Singh could have called Agent Meisel to testify in his case in chief. But there is a big difference between cross-examining a law enforcement officer during the government's case in chief, and cold calling that officer in a defense case. Mr. Singh made the strategic decision not to call any witnesses during the six-week trial, as was his absolute right. The Sixth Amendment still guarantees Mr. Singh the right to confront and cross-examine the witnesses against him, regardless of whether he or any other defendant intends to call that witness to the stand in a defense case.

The Court's limitation on the cross-examination of Agent Meisel was error.

---

2 The government asserts waiver. Defense counsel cannot recall whether or to what extent the issue of severance was discussed at the close of the evidence, and the parties are proceeding without the benefit of the full trial transcripts at this point. This Court should rule on the merits of Mr. Singh's severance argument.

**F. The Government's Improper Rebuttal Prejudiced Mr. Singh**

The government improperly commented in rebuttal on Mr. Singh's failure to subpoena witnesses. The Ninth Circuit has held that such statements are improper when they shift the burden of proof or highlight a defendant's decision not to testify. *See, e.g., United States v. Cabrera*, 201 F.3d 1243, 1250 (9th Cir. 2000). Here, the government's rebuttal argument did both, because unlike the defendant in *Nguyen* (the unpublished case cited by the government), Mr. Singh did not testify or even put on a case. *See United States v. Lan Thi Tran Nguyen*, 502 Fed. Appx. 678, 680 n.3 (9th Cir. 2012) ("Since Nguyen testified in her own defense, no Fifth Amendment concerns are implicated."); *accord Cabrera*, 201 F.3d at 1250 ("Here, Cabrera's Fifth Amendment rights were not implicated because he chose to testify in his own defense.") The cases cited by the government are not dispositive of the issue.

Compounding the improper rebuttal argument is the fact that the government improperly suggested that Mr. Singh could have learned Mr. Azano's immigration status from the internet. Even if Mr. Singh were, as the government contends, "intimately familiar with Azano's online presence," [Doc. 681, p. 10], that has nothing to do with whether Mr. Singh or anyone else could learn about Mr. Azano's B1-B2 Visa from the internet. Government witnesses testified that immigration information is not made available to member of the public, online or anywhere else. The fact that the men were business partners or that Mr. Singh ran a Search Engine Optimization on Mr. Azano does not change the fact that *information about an individual's immigration status is not publicly available online*. It was an error for the government to suggest otherwise to the jury, particularly on rebuttal where Mr. Singh had no opportunity to correct the error. The government's improper rebuttal arguments denied Mr. Singh a fair trial.

/ / /

**G. The Government Withheld Discoverable Information About Ernie Encinas's Pre-Trial Preparation Sessions.**

Mr. Singh has fully addressed this issue in his concurrently-filed Motion to Compel. *See* [Doc. 641].  For the reasons stated therein, this Court should compel the government to produce all evidence relating to Encinas's pre-trial preparation sessions and grant Mr. Singh's request for a new trial.

## CONCLUSION

Because of the individual and collective errors that permeated the trial and influenced the jury's verdict, the verdict cannot stand.  If the Court does not dismiss the indictment or enter a judgment of acquittal, a new trial should be granted in the interests of justice.  Accordingly, Mr. Singh respectfully moves the Court to grant his Rule 33 Motion for new trial.

Dated:  May 11, 2017                    **DUANE MORRIS LLP**

                                        By:   /s/ *Michael L. Lipman*
                                              Michael L. Lipman
                                              Karen Lehmann Alexander
                                              Attorneys for Ravneet Singh