Michael L. Lipman (SBN 66605)
Karen Lehmann Alexander (SBN 265926)
Duane Morris LLP
750 B Street, Suite 2900
San Diego, CA 92101-4681
Telephone: 619 744 2200
Facsimile:  619 744 2201
E-mail:   mllipman@duanemorris.com
          klalexander@duanemorris.com

Attorneys for Defendant
RAVNEET SINGH

# IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>JOSE SUSUMO AZANO MATSURA,<br>RAVNEET SINGH,<br>ELECTIONMALL, INC.,<br>MARCO POLO CORTES, AND<br>EDWARD SUSUMO AZANO HESTER,<br><br>　　　　　Defendants. | Case No. 14CR0388-MMA<br><br>**DEFENDANT RAVNEET SINGH'S REPLY TO GOVERNMENT'S OPPOSITION TO SINGH'S MOTION FOR JUDGMENT OF ACQUITTAL UNDER RULE 29 [Doc. 631]**<br><br>Date:　　　June 2, 2017<br>Time:　　　9:30 a.m.<br>Judge:　　　Michael M. Anello<br>Courtroom:　3A |

## INTRODUCTION

This Court should acquit Mr. Singh of all counts against him because the evidence, taken in the light most favorable to the government, fails to meet the high standard of proof beyond a reasonable doubt as to each essential element of criminal liability. For the reasons addressed below, the government's opposition fails to rebut Mr. Singh's arguments for acquittal on any of the counts.

## ARGUMENT

### A.    Count One:  Conspiracy

The government devotes 7 full pages of its opposition to explaining why Mr. Singh was properly convicted of conspiracy. Yet the government devotes just one short paragraph to addressing the argument Mr. Singh raises in his Motion: that there is insufficient evidence to show that Mr. Singh knew of an overall conspiracy or that his benefits were probably dependent on the success of the entire operation. While a conspirator may not need to know "*all* of the purposes of and *all* of the participants in the conspiracy" in order to be convicted, the government must prove his knowledge of at least *some* of them. *See United States v. Kearney*, 560 F.2d 1358, 1362 (9th Cir. 1997) (quoted in the government's opposition [Doc. 680, p. 5]) (emphasis added).

The government does not dispute that there is *no* evidence that Mr. Singh had any knowledge of, or agreement to participate in, the activities of Jason Wolter, Marc Chase, Symbolic Motors, or Airsam LLC. Instead, the government argues that email discussions between Mr. Singh and Ernie Encinas regarding a possible PAC "offered the jury a rational basis to conclude that Singh understood that other members of the conspiracy pursued different means of achieving their common objective." [Doc. 680, p. 5] To the contrary, the emails regarding the PAC show only that for a period of time, Mr. Singh was hoping he would be selected as a vendor to assist Encinas with setting up a (perfectly lawful) PAC. No rational juror could conclude from these emails that Mr. Singh knew of a broader conspiracy

SINGH'S REPLY TO GOVERNMENT'S OPPOSITION TO SINGH'S MOTION FOR JUDGMENT OF ACQUITTAL

implicating Mark Chase, Symbolish Motors, Jason Wolter, or family and friends of the Azanos.

Because the evidence cannot establish this essential element of criminal liability, the Court should acquit Mr. Singh of Count 1, conspiracy.

**B.    Count Three:  Foreign National Contributions**

Mr. Singh raised three arguments in his Motion regarding the insufficiency of evidence as to the foreign national counts: (1) the evidence failed to show that Mr. Singh knew Mr. Azano was not a U.S. citizen, a dual citizen, or a Lawful Permanent Resident ("LPR"), (2) the evidence failed to show that Mr. Azano compensated Mr. Singh for his services to the Dumanis and Filner campaigns, and (3) the evidence failed to show that the value of ElectionMall's services to the campaign aggregated more than $25,000.  Each of the government's arguments addressing these points fails.

**_i.        No Evidence That Mr. Singh Knew Mr. Azano Was a Foreign National_**

First, the evidence failed to show beyond a reasonable doubt that Mr. Singh knew Mr. Azano was not a U.S. citizen, dual citizen, or LPR.  Over and over again, witnesses at trial – including the top two law enforcement officials for the city of San Diego, District Attorney Bonnie Dumanis and Sheriff Bill Gore – testified that they met with Mr. Azano and assumed that he could lawfully contribute to a local election.  It is no surprise that these witnesses all believed Mr. Azano was a U.S. citizen, dual citizen, or lawful permanent resident.  Mr. Azano lived in the United States, worked in the United States, drove cars and flew planes in the United States, and was a husband and father to United States citizens.

The government points to several pieces of evidence which purportedly establish Mr. Singh's requisite knowledge.  [Doc. 680, pp. 9-11] Each of these pieces of evidence fails to do so, however:

/ /

/ /

- The government points to the fact that Mr. Singh was a "self-professed campaign guru." This has nothing to do with whether or not he knew Mr. Azano was a Mexican citizen and not a U.S. citizen, dual citizen, or LPR.

- The government points to the long-running relationship between Mr. Singh and Mr. Azano, including ElectionMall's work on elections in Mexico. This does not show that Mr. Singh knew Mr. Azano was not a U.S. citizen, dual citizen, or LPR. A U.S. citizen, dual citizen, or LPR can still own a business in Mexico and take an interest in the Mexican elections which will affect the operations of his Mexican business.

- The government points to a "Search Engine Optimization" that Mr. Singh ran on Mr. Azano's company. As addressed in Mr. Singh's Motion for New Trial, this argument is a red herring because no websites or publicly accessible databases identify people's immigration statuses. There is no way that a "Search Engine Optimization" could reveal that Mr. Azano was not a U.S. citizen, dual citizen, or LPR.

- The government asserts that Mr. Singh tried to "hide" the work he did on the Dumanis and Filner campaign. Not so. Mr. Singh used code names for many things. He was extremely private about all of his political work. While this evidence may establish that Mr. Singh was overly cautious, it does not establish that he was engaged in criminal behavior.

- The government points to Meghan Standefer's testimony, but her testimony actually supports Mr. Singh's defense. Despite the government's best efforts to get Ms. Standefer to testify that Mr. Singh told her that Mr. Azano was Mexican, Ms. Standefer could not

truthfully do so.  Instead, she testified only that she knows today that Mr. Azano was "Mexican," and that she may have learned this by reading and hearing things about the case after the indictment.

- The government points to the recorded call between government cooperator Ernie Encinas and Mr. Singh about another "foreign national."  The weight of this videotape evidence was severely undercut by testimony that this conversation was orchestrated by the FBI, designed to trap Mr. Singh into making damaging admissions in connection with the FBI's investigation of this case.  It is also clear from the recording that Mr. Singh is not really paying attention to Encinas during the call.

On balance, the government's evidence wholly failed to prove Mr. Singh's knowledge that Mr. Azano was not a U.S. citizen, dual citizen, or LPR, and no reasonable jury could so find beyond a reasonable doubt.

### ii.  *No Evidence That Mr. Azano paid for ElectionMall's Services*

Second, the government did not prove beyond a reasonable doubt that Mr. Azano paid Mr. Singh or ElectionMall for their work on the Dumanis and Filner campaigns.  The government's opposition fails to address Mr. Singh's theory that the incoming money from Mr. Azano paid for ElectionMall's work on the Kaliman, Snake and Castle projects, rather than the Dumanis and Filner campaigns.  The government's opposition also wholly fails to address the recorded video in which Ernie Encinas tells Ed Clancy that Mr. Singh was "just donating" his time to the Filner campaigns because Mr. Azano had been "so good to him" in connection with these other projects.  These facts, along with others identified in Mr. Singh's original Motion, demonstrate the government's failure to meet its burden of proof on this element.

### iii.    No Evidence of $25,000 In Services

Third, the evidence fails to show that ElectionMall's work on the Dumanis and Filner campaigns aggregated $25,000 or more in a calendar year.  The government cites to an exhibit that set forth a projected budget for the work on the Filner campaign.  [Doc. 680, p. 12] But the trial evidence showed that Exhibit 26-16 was just that:  a *budget*.  Many of the costs identified in that budget never came to fruition.  For example, there is no evidence showing that ElectionMall actually spent $12,000 to $15,000 on "data purchases" or $15,000 on "reseller commissions."  To the contrary, the trial evidence showed that ElectionMall purchased a voter file for much less money than that.  Additionally, the budget contains a line item for a "rental car."  Meghan Standefer testified that Mr. Singh did not have a car while in San Diego. [Doc. 405, p. 62:19-24] Exhibit 26-16 is not dispositive of the $25,000 jurisdictional threshold.

Nor is the "hundreds of thousands of dollars" that the government claims "Azano paid to Singh for his efforts."  [Doc. 680, p. 12] Mr. Singh established at trial that this money was not for the San Diego campaigns – it was for the Kaliman, Snake and Castle projects.  And even if ElectionMall did receive more than $200,000 for its work on the Dumanis and Filner campaigns (which it did not), the jury instructions for Count Three require the jury to calculate the *value* of the services provided – not the amount that ElectionMall charged for them.  *See* [Doc. 463, p. 29] (instructing the jury that the value of the "in-kind" contributions or donations is the fair market value of those goods and services, otherwise defined as the usual and normal charge).  Witness testimony established that the "value" of ElectionMall's services to the campaigns totaled at most a few thousand dollars.

For all these reasons, the Court should enter a judgment of acquittal as to Count Three.

/ /

1

## C.    Counts 35 + 37:  Falsification of Records

2      Regarding Mr. Singh's first legal challenge to the records counts, namely that

3 facts alleged in the indictment do not fall within the purview of 18 U.S.C. § 1519,

4 the government still has failed to cite to convincing authority *from this circuit*

5 establishing that Mr. Singh was properly charged with a violation of § 1519 for the

6 conduct alleged in the indictment.  Mr. Singh acknowledges that the Court has

7 already considered this legal challenge in pre-trial motions.

8      Regarding Mr. Singh's second factual challenge to the records counts, the

9 government fails to address the fact that Mr. Singh was a vendor with no legal

10 obligation to report anything to the San Diego City Clerk's office, that he and his

11 team operated openly within the Dumanis and Filner campaigns, and that according

12 to one witness, Mr. Singh (through his employee Miguel de la Vega) disclosed to the

13 Filner campaign manager that Mr. Azano paid for ElectionMall's services.  The

14 government attempts to summarily dismiss this argument by saying, "That avoids the

15 entire objective of the conspiracy, which was to avoid reporting requirements

16 through illicit funding arrangements." [Doc. 680, p. 13] Mr. Singh agrees.  That is

17 why he is legally innocent not only of the records falsification charges, but also

18 conspiracy to commit the same.

19      What the government does *not* address is how a rational juror could possibly

20 find a defendant guilty of concealing material information from a campaign when

21 that defendant openly disclosed the so-called "secret" information to the campaign's

22 manager.  For these reasons, the government's case against Mr. Singh as to Counts

23 35 and 37 fail.

24

25 / /

26

27 / /

28

## CONCLUSION

Taking the trial evidence in the light most favorable to the government, the evidence fails to support a verdict of guilt as to any of the four counts against Mr. Singh.  Mr. Singh respectfully requests that the Court grant his Rule 29 Motion.

Dated:  May 11, 2017                    **DUANE MORRIS LLP**

                                        By:    /s/ *Michael L. Lipman*
                                               Michael L. Lipman
                                               Karen Lehmann Alexander
                                               Attorneys for Ravneet Singh

SINGH'S REPLY TO GOVERNMENT'S OPPOSITION TO SINGH'S MOTION FOR JUDGMENT OF ACQUITTAL