Michael L. Lipman (SBN 66605)
Karen Lehmann Alexander (SBN 265926)
Duane Morris LLP
750 B Street, Suite 2900
San Diego, CA 92101-4681
Telephone: 619 744 2200
Facsimile: 619 744 2201
E-mail:   mllipman@duanemorris.com
          klalexander@duanemorris.com

Attorneys for Defendant
RAVNEET SINGH

# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 14CR0388-MMA |
| Plaintiff, | ) ) | **DEFENDANT RAVNEET SINGH'S REPLY TO GOVERNMENT'S OPPOSITION TO SINGH'S MOTION TO DISMISS THE INDICTMENT UNDER BRADY AND RULE 16 [Doc. 633]** |
| v. | ) ) ) | |
| JOSE SUSUMO MR. AZANO MATSURA, RAVNEET SINGH, ELECTIONMALL, INC., MARCO POLO CORTES, AND EDWARD SUSUMO MR. AZANO HESTER, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) ) | Date:      June 2, 2017<br>Time:      9:30 a.m.<br>Judge:     Michael M. Anello<br>Courtroom: 3A |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................. 1

*BRADY A*RGUMENT .................................................................................... 2

    A.    The Evidence Was Exculpatory On the Records Falsification
        Counts ......................................................................................... 2

    B.    The Evidence Was Suppressed ................................................ 4

    C.    The Government's Failure to Disclose the Evidence Was
        Prejudicial .................................................................................. 6

    D.    The Appropriate Remedy Is Dismissal of the Indictment ............... 8

RULE 16 ARGUMENT .................................................................................. 9

CONCLUSION .............................................................................................. 11

# TABLE OF AUTHORITIES

**Cases**

*Giglio v. United States*, 405 U.S. 150 (1972) .................................................. 3

*Paradis v. Arave*, 240 F.3d 1169 (9th Cir. 2001) ........................................... 9

*United States v. Brady*, 373 U.S. 83 (1963) ....................................... *Passim*

*United States v. Chapman*, 524 F.3d 1073 (9th Cir. 2008) ........................ 8-9

*United States v. Liew*, ___ F.3d ____, No. 14-10367 (9th Cir. May 5,
    2017) .............................................................................................. 9

*United States v. Park*, 319 F.Supp.2d 1177 (D. Guam 2004) ................. 9-10

**Other Authorities**

Local Crim. R. 47.1(g) .................................................................................. 2

Rule 16 .............................................................................................. 1, 9, 11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **INTRODUCTION**

Three things are remarkable about the government's opposition to Mr. Singh's *Brady* and Rule 16 motion, in which Singh moves for dismissal of the indictment based on the government's failure to disclose to the defense the material and exculpatory testimony of Ed Clancy, namely that Miguel de la Vega told him in campaign headquarters that Mr. Azano paid for Mr. Singh's services to the Filner campaign (hereinafter referred to as the "suppressed testimony").

First, the government's opposition is remarkable for the things it admits (or fails to deny):

1.      The government admits that the suppressed testimony was never disclosed to the defense.

2.      The government admits that it was aware of the suppressed testimony and elicited it from Clancy on direct examination.

3.      The government admits the existence of some document that AUSA Pletcher showed Clancy pre-trial to remind him of the suppressed testimony.  [Doc. 682, p. 9]

4.      The government fails to deny the inference that AUSA Pletcher caused a witness to testify inaccurately by "reminding" him of a prior statement he never made.

Second, the government's opposition is remarkable for the things it asserts:

1.      The government asks this Court to believe that the suppressed testimony is not exculpatory on the falsification of records counts.

2.      The government asks this Court to believe that its failure to turn over the suppressed testimony to the defense doesn't matter, because it turned over something similar.

3.      The government asks this Court to believe that its agents and attorneys meticulously recorded every single item of material testimony from 60+ witnesses in

SINGH'S REPLY TO GOVERNMENT'S OPPOSITION TO
SINGH'S MOTION TO DISMISS UNDER *BRADY*, RULE 16

countless pre-trial interview and preparation sessions, yet somehow they missed this one portion of Clancy's testimony.

4. The government asks this Court to believe that even though it has no idea what document AUSA Pletcher showed Clancy, it definitely wasn't discoverable (or had already been produced).

Most remarkable of all, the government asks the Court to take all these factual assertions on faith, without introducing a single declaration or other piece of evidence on which the Court could base its factual findings. *See* Local Crim. R. 47.1(g).

## ***BRADY* ARGUMENT**

### A. The Evidence Was Exculpatory On the Records Falsification Counts

Clancy testified for the first time at trial that Mr. Singh's lead employee and right-hand man, Miguel de la Vega, told Filner's campaign manager – the one person responsible for ensuring that the Filner campaign accurately reported all sources of its donations and contributions to the San Diego City Clerk's office – that Mr. Azano was the donor of ElectionMall's services to the Filner campaign.

Clancy's suppressed testimony is clearly exculpatory to the falsification of records counts, and it strains credulity that the government would argue otherwise. The government argues that "[t]he evidence directly supports the United States' allegation that Azano paid for ElectionMall's services." [Doc. 682, p. 5] But the government chose to charge Mr. Singh with more than just aiding and abetting illegal foreign national contributions. The government *also* chose to charge Mr. Singh with falsification of records, and its theory of prosecution on those counts was that Mr. Singh hid the source of funding from the Filner campaign, causing it to file a false campaign financing report.

The government may regret today its decision to charge Mr. Singh with two different types of crimes with diverging elements of liability. That does not change the fact that once the government elected to do so, it was constitutionally and

statutorily obligated to turn over all evidence that would potentially exculpate Mr. Singh of the records counts, even if that evidence tended to incriminate him on the foreign national contributions. The government does not dispute that as a legal matter, *Brady* compels disclosure of evidence that exculpates a defendant on one of multiple counts, even if that same evidence incriminates him on other counts.

The government's only argument for why this suppressed testimony is not exculpatory appears in a footnote. *See* [Doc. 682, p. 6 n.1] The government asserts – without citing any legal authority – that because Clancy was a co-conspirator, Miguel de la Vega's statement to him was not exculpatory. There are multiple problems with this argument.

First, the evidence at trial showed that Clancy was *not* a co-conspirator. On cross examination, Mr. Singh's counsel asked Clancy to identify exactly what he did wrong in this case. Clancy was unable to do so. Clancy's testimony on cross-examination revealed that while he had been very well prepped to testify that he "made a mistake" and "buried his head in the sand," he could not actually articulate that he "knowingly" or "willfully" participated in any purported crimes. Clancy's lack of knowledge or intent negates the *mens rea* element of conspiracy liability, and refutes the government's assertion that he was a co-conspirator.[1]

Second, even assuming that Clancy were a co-conspirator (which he was not), the government failed to show that Miguel de la Vega was a co-conspirator. Because Miguel de la Vega was not a co-conspirator, he could not have known that Clancy was a co-conspirator (or indeed, that there even was a conspiracy). The only reason for an innocent third party like de la Vega to tell the Filner campaign manager that Azano paid for ElectionMall's services is to ensure that the Filner campaign manager properly reports the source of the funding to the San Diego City Clerk's office. And

---

[1] If Clancy were a co-conspirator, the government's suppression of his testimony implicates *Giglio v. United States*, 405 U.S. 150 (1972) (obligating the government to turn over information pertaining to its deals with witnesses). But Clancy was not a co-conspirator.

the only reason de la Vega would do so was if Mr. Singh had specifically authorized him to. Thus even if Mr. Singh and Clancy were co-conspirators (which they were not), *Miguel de la Vega's* statement is still exculpatory on the falsification of records counts.

Third, even if Ed Clancy were a co-conspirator (which he was not), and even if Miguel de la Vega were in on the conspiracy (which he was not), the statement is still exculpatory. As a vendor, ElectionMall has no affirmative obligation to report anything to the San Diego City Clerk's office. Campaign manager Clancy bore the sole responsibility for ensuring that the campaign made complete and accurate financial disclosures. The Filner campaign treasurer testified that she worked off-site in San Francisco during the campaign; thus, neither Mr. Singh nor Miguel de la Vega would have had any way to communicate with her directly. The suppressed testimony shows that Mr. Singh through de la Vega properly informed Clancy of the source of the funds. Clancy's decision to withhold this information from the campaign treasurer is an independent intervening cause which has no bearing on Mr. Singh's liability for falsification of records.

For all of these reasons, Clancy's suppressed testimony was clearly exculpatory under *Brady*, and apart from one unsupported footnote, the government appears to concede as much in its opposition on pages 5:27-6:10.

## B.   The Evidence Was Suppressed

The government has admitted since day one that Clancy's testimony about Miguel de la Vega was never disclosed to the defense. Rather than accepting this fact and moving on to its prejudice argument, however, the government now tries to convince this Court that it nonetheless satisfied its *Brady* obligations by disclosing evidence which (in the government's mind) was substantially similar to the suppressed testimony. *See* [Doc. 682, p. 6]. The government cites no authority suggesting that the government can comply with *Brady* by disclosing some but not all of the exculpatory evidence in its possession – and it cannot. The clear message

of *Brady* is that the government must produce *all* exculpatory evidence to the defense. On this ground alone, the government's argument fails. The Court's inquiry under the second *Brady* prong should stop here.

Should the Court be inclined to indulge the government's argument further, the argument also fails because the evidence which was produced – namely, Ernie Encinas's plea agreement and Encinas's and Clancy's 302s – was not substantially similar to the suppressed testimony in any way, shape, or form. Neither the plea agreement nor the 302s mention that *Miguel de la Vega* told Clancy about Azano's financing.[2] This omission is significant for two reasons. First, Miguel de la Vega was not charged as a defendant or named as a co-conspirator in this case. Not only was he not implicated in the offenses, he also never retained counsel, signed an immunity agreement, or admitted any wrong-doing in connection with the events of this case. This fact is significant because his statements, disclosures, and testimony would undoubtedly carry more weight with the jury than the statements, disclosures, and testimony of alleged co-conspirators Ernie Encinas, Mr. Singh and Mr. Cortes. The jury would likely view Miguel de la Vega as similarly situated to other third-party ElectionMall employees like Aaron Ronsheim and Meghan Standefer, whose testimony the jury appeared to credit. Second, the omission is significant because without knowing that Miguel de la Vega participated in this exculpatory conversation, defense counsel would have had no reason to follow up with him in pre-trial investigation, or to cross-examine witnesses at trial like Meghan Standefer about de la Vega's role in ElectionMall.

The government also wishes this Court to believe that the Encinas plea agreement and 302s put the defense on notice that there were "witnesses who would have testified that Singh *admitted* that Azano paid for his in-kind services." [Doc. 682, p. 7] Not so. While various documents vaguely allude to that first meeting in

---

2 For the Court's reference, Mr. Singh attaches as Exhibit 1 all substantive Clancy 302s. *See also* [Doc. 682, Ex. 1].

1  the Filner campaign headquarters between Singh, Encinas, and Cortes, the only
2  specific relevant detail provided by the government as to the substance of that
3  conversation is found in a Clancy 302: "Clancy wanted to know how much
4  [ElectionMall's services] would cost before he agreed.  Clancy asked for an invoice,
5  but Singh stated that it would be 'taken care of[.]'" [Ex. 1, 8/27/2013 p. 7]

6  That's it.  The only relevant, concrete thing Mr. Singh learned from the
7  government about that first meeting in campaign headquarters is that, according to
8  Clancy, Mr. Singh told him ElectionMall's services would be "taken care of."  "It's
9  taken care of" hardly constitutes an admission that Mr. Azano is the donor behind
10  ElectionMall's services.  Indeed, throughout trial, the government used that line –
11  "it's taken care of" – to support its theory that Mr. Singh was *evasive* about who was
12  paying for ElectionMall's services to the campaign.  *See, e.g.,* [Doc. 378, p. 23]
13  (prosecutor's opening statements).

14  No 302 or plea agreement ever said that Mr. Singh openly admitted to the
15  Filner campaign manager that Mr. Azano paid for ElectionMall's services.  No 302
16  or plea agreement ever said that one of Mr. Singh's *employees* openly admitted to the
17  Filner campaign manager that Mr. Azano paid for ElectionMall's services.  The
18  government suppressed that evidence from the defense, and, as will be discussed
19  below, the government's suppression of that evidence prejudiced Mr. Singh's pre-
20  trial investigations and his trial defense strategy on all four counts.

21  **C.   The Government's Failure to Disclose the Evidence Was Prejudicial**
22  In order to demonstrate prejudice, Mr. Singh need only establish a "reasonable
23  probability" that the outcome of his trial would have been different as to any of the
24  four counts.  There is more than a reasonable probability that had Mr. Singh
25  incorporated Clancy's suppressed testimony into his pre-trial investigation and trial
26  defense strategy, the jury would have acquitted or hung on at least the falsification of
27  records counts (if not all counts).  After all, the jury acquitted Mr. Singh's co-

defendants of the records counts, showing that the jury already had some reasonable doubts as to the government's evidence on these counts.

If Mr. Singh had incorporated Clancy's suppressed testimony into his pre-trial investigation and trial defense, he would have asserted the following defense: as to the falsification of records counts, *the government cannot show that Mr. Singh hid anything from the campaigns*. As to the foreign national counts, *the government cannot show that Mr. Singh had anything to hide*. Mr. Singh had no idea that Mr. Azano was legally prohibited from donating to the campaigns. Like Bonnie Dumanis, Sheriff Gore, Samantha Bowman-Fleurov, Marla Marshall, and countless other witnesses who testified for the government, Mr. Singh believed that Mr. Azano was a United States citizen, dual citizen, or lawful permanent resident.

This comprehensive theory of defense provides a plausible, simple, and complete defense to all four counts. It is reasonably probable that the jury would have rendered a different verdict as to any or all of the counts at trial had Mr. Singh chosen to pursue this defense.

The government asserts today that the idea that Mr. Singh was unaware of Mr. Azano's immigration status is "just implausible." [Doc. 682, p. 7 n.2] First of all, for the reasons identified in Singh's Motion for Acquittal, that defense is entirely plausible: over and over again, government witnesses testified that they all believed Mr. Azano could lawfully contribute to a San Diego election.[3] *See* [Doc. 631, pp. 11-12] More importantly, that issue is irrelevant. It does not matter whether the jury believed Mr. Singh had knowledge of Mr. Azano's status as a foreign national. As long as the jury found that Mr. Singh openly disclosed Mr. Azano's financing of ElectionMall's services to the Filner campaign, that is sufficient to support an

---

[3] To the extent the government's argument relies on a document introduced into evidence by the *defense* (the Search Engine Optimization document), it is improper: had Mr. Singh proceeded under the alternate defense theory identified in this Reply, he would not have introduced that document into evidence. That document was only relevant to show the outside work that ElectionMall performed for Mr. Azano, and supported Mr. Singh's defense at trial that the government failed to prove that Mr. Azano paid for ElectionMall's work on the campaigns.

SINGH'S REPLY TO GOVERNMENT'S OPPOSITION TO
SINGH'S MOTION TO DISMISS UNDER *BRADY*, RULE 16

1    acquittal.  *See* [Doc. 685, p. 2] (government acknowledging that "the document

2    obstruction counts nowhere require the jury to find knowledge of Azano's status as a

3    foreign national at all").

4            The government also appears to forget its burden of proof.  *See* [Doc. 682, p. 7

5    n.2].  Mr. Singh need not convince the jury of anything.  The jury need only find a

6    reasonable doubt as to any of the essential elements of the crime in order to render a

7    different verdict.

8            For these reasons, Mr. Singh has shown that he was prejudiced by the

9    government's suppression of exculpatory evidence.  Had Mr. Singh known the full

10   measure of Ed Clancy's testimony in advance, he could have pursued an alternate

11   defense strategy that would have created a reasonable probability of acquittal as to

12   the falsification of records counts.  There is also a reasonable probability that the

13   change in defense strategy would have led to a different jury verdict as to the

14   remaining counts at trial, since Mr. Singh no longer would have pursued a defense

15   strategy as to Counts One and Three that was directly contradicted by Ed Clancy's

16   (suppressed) (surprise) trial testimony.  The Court should find that the government

17   has committed a *Brady* violation.

18   **D.      The Appropriate Remedy Is Dismissal of the Indictment**

19           In his Motion, Mr. Singh extensively cited Ninth Circuit case law

20   demonstrating that the remedy of dismissal is appropriate when the government

21   "recklessly disregards" its constitutional discovery obligations.  *See United States v.*

22   *Chapman*, 524 F.3d 1073, 1084 (9th Cir. 2008).  In its opposition, the government

23   neither addressed *Chapman* nor denied that prosecutors acted with "reckless

24   disregard" for their constitutional obligations.  Because the government has offered

25   no evidence (or even argument) refuting Mr. Singh's characterization of prosecutors'

26   conduct, this Court should make a factual finding of "reckless disregard."

27           Additionally, the government has declined to address the inference raised by

28   Ed Clancy's testimony on cross-examination that AUSA Pletcher led a witness to

testify incorrectly by "reminding" him of a prior statement that he never actually made. The government's silence on this issue speaks volumes. The lack of any explanation by the government suggests one of two scenarios: either Clancy's cross-examination testimony was true, and the government (however unintentionally) elicited false trial testimony from a key witness; or Clancy's cross-examination testimony was untrue, and the government allowed it to stand uncorrected before the Court and the jury.

For all these reasons, the facts support a finding that the government acted in "reckless disregard" of its constitutional obligations, and/or that its actions were "so grossly shocking and outrageous as to violate the universal sense of justice," warranting the remedy of dismissal of the indictment.

## **RULE 16 ARGUMENT**

The government strongly denies the existence of any document memorializing the suppressed testimony of Ed Clancy. [Doc. 682, p. 9] The government then qualifies its denial by saying that there are "no (none, nothing, zero) *discoverable* records in the United States's possession that memorializes (*sic.*) statements by Clancy that have not been produced." *Id.* at n.2 (emphasis added).

The difference is significant. For example, documents which the government may not believe are discoverable (such as an agent's or attorney's rough notes from meeting with witnesses) may in fact be discoverable under these unique circumstances. *See, e.g., United States v. Liew*, ___ F.3d ____, No. 14-10367, at *35-36 (9th Cir. May 5, 2017); *Paradis v. Arave*, 240 F.3d 1169, 1173 (9th Cir. 2001); *United States v. Park*, 319 F.Supp.2d 1177, 1178 (D. Guam 2004).

Clancy testified on cross-examination that he and AUSA Pletcher practiced this particular portion of his testimony on at least four occasions prior to trial. Clancy testified that he knew exactly when this question was coming, and what answer was expected of him. It seems likely under these circumstances that AUSA Pletcher would have written *something* – notes on a yellow legal pad, a draft direct

examination line – memorializing, suggesting, or incorporating by reference Clancy's suppressed testimony.

Additionally, the government has admitted that Ed Clancy was shown some type of document during his pre-trial preparation which AUSA Pletcher used to "remind" him of his earlier testimony. [Doc. 682, p. 9 n.2] Yet the government can only "guess" today what that document was. *Id*. Mr. Singh is highly skeptical of the government's "guess" that that document was Ernie Encinas's plea agreement, since it is unclear why a prosecutor would use a cooperator's plea agreement (which was drafted by the government, not the witness) in order to refresh a percipient witness's memory about his own trial testimony. To the best of the defense's knowledge, the Encinas plea agreement was never expressly adopted by Clancy, it does not mention Clancy by name, and no 302 or follow-up letter or email mentions that Clancy discussed Encinas's plea agreement with the government.

Mr. Singh urges this Court to inquire further to see if anything more can be learned about the nature of the document that was shown to Clancy in pre-trial preparations. If the government can only "guess" as to what this document was, how can it be so certain that it produced this document to the defense?

The lesson of *Brady* and its progeny is that sometimes, despite the government's best efforts to determine what is and is not "discoverable," the government gets it wrong. Such errors in the heat of the moment (or in the aftermath of a long and hotly-contested trial) are understandable: the government is an advocate. But the facts of this case and the sworn testimony of the government's own witness belie the government's assertions that it has shown a "scrupulous adherence" to its legal obligations. *See* [Doc. 682, p. 11]. Since the facts suggest that some document exists which memorializes Clancy's suppressed testimony (and the government has provided the Court with no declaration or evidence from which the Court could make a factual finding otherwise), since that document is material to Mr. Singh's preparation of a defense, and since the government concedes that such

document was never turned over to the defense, this Court should dismiss the indictment.

## **CONCLUSION**

For the reasons articulated above, Mr. Singh requests that this Court grant his Motion to Dismiss the Indictment for *Brady* and Rule 16 violations.  Specifically, to ensure clarity of the record in the event of appellate review, Mr. Singh respectfully requests that this Court make a separate factual finding as to each of the predicate prongs under *Brady*, to wit:

1.  That the undisclosed portion of Ed Clancy's testimony was *exculpatory*;

2.  That the undisclosed portion of Ed Clancy's testimony was *suppressed*;

3.  That the government's suppression of the exculpatory testimony *prejudiced* Mr. Singh's defense at trial; and

4.  That the government's suppression of the exculpatory testimony evidences a "reckless disregard" and "flagrant" conduct that warrants the remedy of dismissal.

Dated:  May 11, 2017                    **DUANE MORRIS LLP**

By:    /s/ *Michael L. Lipman*
                    Michael L. Lipman
                    Karen Lehmann Alexander
                    Attorneys for Ravneet Singh